IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No.

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MURRAY TRANSFER & STORAGE COMPANY, | ) |
| INC., TERMINAL STORAGE CO., INC., | ) |
| AND CHARLES DWAYNE CAULEY, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiff, the United States of America, for its complaint, alleges as follows:

**I. INTRODUCTION**

1. This is an action brought by the United States to recover statutory damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-33, and to recover all available damages for unjust enrichment and payment under mistake of fact. These claims arise out of the knowing submission of false claims and related false records and statements to the United States. In sum, Defendants caused the submission of false claims and caused the use of false invoices and false statements regarding claims under two contracts for moving and storage for the Department of the Navy. Numerous claims were false because they were part of a fraudulent scheme to

1

obtain payments at a false daily rate rather than the monthly rate provided for in the contracts.

## II.  JURISDICTION AND VENUE

2.   This action arises under the False Claims Act, as amended 31 U.S.C. §§ 3729-3733, and at common law.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1331.

3.   This Court has personal jurisdiction over the Defendants because they prepared and submitted false claims and false statements that were to be paid by the United States, and/or were unjustly enriched, and/or were paid under mistake of fact in and from this district.

4.   Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(c), and under 31 U.S.C. § 3732(a).  The Defendants transacted business within the district, and acts proscribed by the False Claims Act occurred within the district at Camp Lejeune, North Carolina.

## III.  PARTIES

5.   Plaintiff is the United States of America, acting on behalf of the Department of the Navy. The Navy is an agency and instrumentality of the United States and its activities, operations and contracts are paid from federal funds.

6.   Defendant  Murray  Transfer  &  Storage  Company,  Inc.,

2

(herafter "Murray") is a corporation organized and existing under the laws of the State of North Carolina.  Murray provided services in eastern North Carolina.

7.     Defendant Terminal Storage Co., Inc., (herafter "Terminal") is a corporation organized and existing under the laws of the State of North Carolina.  Terminal provided services in eastern North Carolina.

8.  Defendant Charles Dwayne Cauley (hereafter "Cauley") is the manager of both Murray and Terminal, as well as the corporate secretary of Murray.  Mr. Cauley caused the submission of claims for payment and submission of false records and false statements in eastern North Carolina.

## IV.    FACTUAL ALLEGATIONS

9.    Murray and Terminal are related moving and storage companies, with common management and overlapping ownership.

10.    Murray and Terminal both provide moving and storage services to military bases in North Carolina.

11.    Murray and Terminal sought and obtained numerous contracts for the transportation and storage of personal effects and household goods in support of deploying marines stationed at Marine Corps Base Camp Lejeune, Marine Corps Air Station, and other locations.

12.    Defendant Cauley managed both Murray and Terminal during the 2011 to 2013 time period.

3

13.    Murray and Terminal had been providing moving and storage services for military bases in North Carolina for many years prior to 2011, and had experience bidding for moving and storage contracts and entering contracts with the Department of Navy.

14.    Defendant Terminal was awarded Contract M67001-06-D-0006 ("2006 Contract"), on April 6, 2006, for moving and storage services at Camp Lejeune beginning in 2006, and continued with extensions to March, 2011.  See, 2006 Contract attached hereto as Exhibit A.

15.    The 2006 Contract with Terminal provided for various daily storage rates ($0.40, $0.50, $0.59, $0.75) at Contract Line Item Numbers ("CLINs") 0001AE, 0002AH, OOO3AJ, 0004AH, 1001AE, 1002AH, 1003AJ, 1004AH, 2001AE, 2002AH, 2003AJ, 2004AH, 3001AE, 3002AH, 3003AJ, 3004AH, 4001AE, 4001AH, 4003AJ, and 4004AH, referencing Specifications Paragraphs C5.7 and C5.15.   See, Exhibit A at pages 14-33.

16.    The 2006 Contract with Terminal provided for daily storage rates, stating under Description Section in paragraph C5.15 that "(SUBCLINS 0002AH and subsequent option CLINS) Rate for Household Goods Storage. … STORAGE PERIOD – DAILY  …  NOTE: OFFERS ARE TO BE BASED ON THE DAILY STORAGE RATE PER GROSS HUNDRED WEIGHT." See, Exhibit A at pages 43-44.

4

17.  Dwayne Cauley submitted the Terminal 2006 Contract to the Government.  See, Facsimile dated March 8, 2006, attached hereto as Exhibit B.

18.  During Terminal's performance of the 2006 Contract, the Contract Specialist notified Terminal by email on May 10, 2010, that irregular Terminal invoices suggested a consistent pattern of false invoices that appeared to be fraud.  See, Email dated May 10, 2010, attached hereto as Exhibit C.

19.  On information and belief, the consistent pattern of false invoices had been brought to the attention of Terminal-Murray officials Dwayne Cauley and Drew Rosen before May 10, 2010.

20.  Terminal admitted that certain invoices submitted under the 2006 Contract were incorrect, and repaid the improperly billed amounts that had been identified in the email of May 10, 2010.

21.  Defendant Terminal had contracts for moving and storage services at Camp Lejeune from before 2004 through 2011.

22.  Dwayne Cauley was identified as the Commercial Contract Administrator for Terminal during at least part of this time period.

23.  The Navy communicated to Terminal and other competitions that it was seeking bids for moving and storage services beginning April 1, 2011.

24.  Defendants Cauley and Terminal were informed during the bid solicitation process that the 2011 Contract was being changed

to a one year contract period because of the substantial cost overruns on the prior Terminal contract.

25.   Terminal had been paid far in excess of the contract award amounts stated in Terminal's prior 2006 Contract and extensions.

**TERMINAL'S 2011 CONTRACT**

26.   During the contract solicitation and award process for the 2011 Contract, Government officials changed the contract terms to reduce expenses.

27.   The changes to the proposed 2011 Contract included changing the storage billing rate under the new contract to a monthly billing rate.

28.   Defendant Terminal submitted their technical proposal on approximately February 28, 2011, with a total estimate of $109,658 to complete the requirements under the contract.  See, 2011 Contract Solicitation attached hereto as Exhibit D (pages 19-58 omitted from original submitted).

29.   Manager Dwayne Cauley signed the 2011 Contract Solicitation on or about February 28, 2011.  See, Exhibit D.

30.   The 2011 Contract Solicitation payment estimate of $109,658 was calculated based upon a monthly storage rate, stating in bold under "SECTION B GENERAL INTENT" (B.6.1) that "**THE ESTIMATED QUANTITIES ARE CALCULATED AS SUCH: (AMOUNT OF PICKUPS X NET-HUNDRED**

6

**POUNDS WEIGHT X MONTHS); 1-DAY WILL BE USED AS 30 DAYS INCREMENTS**
….." See, Exhibit D at page 3.

31. Terminal's technical proposal and past performance reference stated that Terminal had been providing storage services at Camp Lejeune for over forty years.

32. Government officials specifically discussed with Defendant Cauley that the storage rate would change from a daily rate to a monthly rate prior to the award of the 2011 Contract in March, 2011.

33. Government officials directly questioned Defendant Cauley as to whether Terminal could perform the contract at $109,658 for the estimated quantities during the April 2011 to March 2012 time period.

34. Defendant Cauley responded to these concerns regarding whether Terminal could perform under the contract and stated that he understood that the maximum amount to be paid under the 2011 Contract was $109,658 for the estimated quantities for the performance period April 1, 2011, to March 31, 2012.

35. Defendants Cauley and Terminal understood in March, 2011, that the bid for the 2011 Contract would be lower than the amount actually paid on the previous contract for the same services, and lower than the amount estimated by the Government for the services under the new 2011 Contract.

36.  Defendants   Cauley   and   Terminal   confirmed   their
understanding of the new terms and requirements of the 2011 Contract
to Government officials in March, 2011, based on concerns raised by
Government   officials   about   Terminal   possibly   under-bidding   or
misunderstanding of contract requirements.

37.  Defendants Cauley and Terminal communicated to Government
officials, during the solicitation process for the new 2011 Contract,
that Terminal's bid was lower than competitors for three reasons,
(1) the contract risk for a one-year contract was much lower than
a  five-year  contract,  (2)  the  prior  Terminal  contract  (2010
extension) was pro-rated on a day-by-day basis and the new 2011
Contract would be invoiced on a monthly basis regardless of days in
storage such that full month storage could be claimed, and (3) the
unit of issue would be changed from Gross Hundred Weight (GCWT) to
Net-Hundred Weight (NCWT).

38.  Defendant Cauley and an owner of Terminal discussed with
Government officials, in or around March, 2011, the practicality of
whether Terminal could perform under the new requirements of the
proposed 2011 Contract, including the $109,658 total amount.

39.  Defendants  Terminal  and  Cauley  were  aware  during  the
solicitation of the proposed 2011 Contract that the storage rate
billing method was changed from a daily rate to a monthly rate.

8

40. Defendants Terminal and Cauley discussed this change to a monthly billing rate with Government officials around March, 2011.

41. On or about March 23, 2011, the Navy awarded Contract No. M67001-11-D-1001 (hereinafter "2011 Contract") to Terminal for a total contract amount of $109,658.25, for a period of twelve months, from April 1, 2011, to March 31, 2012.   See, 2011 Contract Order attached hereto as Exhibit E.

42. The 2011 Contract expressly incorporated the Federal Acquisition Regulations ("FAR") and Defense Federal Acquisition Regulations ("DFAR") requirements.  See Exhibit E at page 4 (paragraphs B.3 and B.4 ) and page 36 (paragraph E.5).

43. The 2011 Contract expressly stated the change to monthly billing rates for storage, including that "Billing is for a full month [and] [a]ny portion of a month in storage will be billed a full-month."   See, Exhibit E at pages 8, 12, 17 and 20.

44. The 2011 Contract stated in "SECTION B GENERAL INTENT" (B.6.1) that "THE ESTIMATED QUANTITIES ARE CALCULATED AS SUCH: (AMOUNT OF PICKUPS X NET-HUNDRED POUNDS WEIGHT X MONTHS); 1-DAY WILL BE USED AS 30 DAYS INCREMENTS …."   See, Exhibit E at page 5.

45. The 2011 Contract stated (Item No 0001AE) "Storage Rates for Routine Deployment – Personal Effects (See Specifications, Paragraph C5.7).  Billing is for a full month.  Any portion of a

month in storage will be billed a full-month." See, Exhibit E at page 8.

46. The 2011 Contract stated (Item No 0001AE) "UNIT PRICE" as "$.25" per "UNIT Hundred Pounds (CWT)" with an estimate of "QUANTITY" of 1,850 for total storage amount of $462.50. See, Exhibit E at page 8.

47. The 2011 Contract stated (Item No 0002AH) "Routine Storage (See Specifications, Paragraph C5.15). Billing is for a full month. Any portion of a month in storage will be billed a full-month." See, Exhibit E at page 12.

48. The 2011 Contract stated (Item No 0002AH) "UNIT PRICE" as "$.25" per "UNIT Hundred Pounds (CWT)" with an estimate of "QUANTITY" of 375 for total storage amount of $93.75. See, Exhibit E at page 12.

49. The 2011 Contract stated (Item No 0003AH) "Emergency Storage (See Specifications, Paragraph C5.15). Billing is for a full month. Any portion of a month in storage will be billed a full-month." See, Exhibit E at page 17.

50. The 2011 Contract stated (Item No 0003AH) "UNIT PRICE" as "$.45" per "UNIT Hundred Pounds (CWT)" with an estimate of "QUANTITY" of 1,875 for total storage amount of $843.75. See, Exhibit E at 17.

51. The 2011 Contract stated (Item No 0004AE) "Storage Rates for Emergency Deployment – Personal Effects (See Specifications,

10

Paragraph C5.7). Billing is for a full-month. Any portion of a month in storage will be billed a full month." See, Exhibit E at page 20.

52. The 2011 Contract stated (Item No 0004AE) "UNIT PRICE" as "$.49" per "UNIT Hundred Pounds (CWT)" with an estimate of "QUANTITY" of 3,000 for total storage amount of $1,470.00. See, Exhibit E at page 20.

53. The 2011 Contract stated in "Section C – Descriptions and Specifications" (C5.7), that "(SUBCLINS 0001AE, 0004AE) Storage Rate for Personal Effects / Baggage. Storage rate shall be per net hundredweight." See, Exhibit E at page 30.

54. The 2011 Contract stated in "Section C – Descriptions and Specifications" (C5.15), that "(ALL SUBCLIN's) Rate for Household Goods Storage. Storage rate shall be per net hundredweight. STORAGE PERIOD – DAILY …." See, Exhibit E at page 30.

55. The 2011 Contract essentially stated that the billing for routine deployment storage ($.25, Line Item 0001AE) and emergency deployment storage ($.49, Line Item 0004AE) for personal effects, as well as routine storage ($.25, Line Item 0002AH) and emergency storage ($.45, Line Item 0003AH) for household goods, was to be billed at a full month unit price, and that any portion of the month would be billed as a full month. See, Exhibit E at pages 5, 8, 12, 17 and 20.

11

56.   Stated simply, the 2011 Contract provisions provided for a payment rate of either $0.25, $0.45 or $0.49, multiplied by the total number of months of storage, multiplied by the weight for personal effects or household goods.

57.   Terminal billed and was paid a total of $315,851 for the services performed under the 2011 Contract during the period from April 1, 2011, to March 31, 2012, excluding the additional residual billing under this contract for periods after March 31, 2012.

58.   Terminal billed and was paid a total of $423,943 for the services performed under the 2011 Contract during the period from April 1, 2011, to December 31, 2012, including the residual billing period for other invoices paid from April 1, 2012, through December 31, 2012,

59.   Terminal submitted numerous invoices under the 2011 Contract for storage services between March 31, 2011, and December 31, 2012.

60.   These invoices submitted under the 2011 Contract systematically calculated payment for storage at daily storage rates.

61.   Terminal submitted a total of 2,070 invoices under the 2011 Contract for storage services provided between April 1, 2011 and December 31, 2012.

12

62.   Terminal submitted 590 of these 2070 invoices under the 2011 Contract for the residual period, April 1, 2012, through December 2012, also using the daily rate calculation.

63.   For invoice examples, Terminal submitted Emergency Deployment Invoices for April, 2011, ("April 2011 Invoices") in the amount of $5,374.79.  See, April 2011 Invoices attached hereto as Exhibit F.

64.   The April 2011 Invoices were submitted by Terminal Storage with a certification that the invoices were correct.  See, Exhibit F.

65.   Terminal manager Dwayne Cauley caused the April 2011 Invoices to be submitted.

66.   Dwayne Cauley signed the summary cover page for the April 2011 Invoices under the statement "I CERTIFY THESE INVOICES TO BE CORRECT AND JUST AND THAT PAYMENT HAS NOT BEEN RECEIVED."  See, Exhibit F.

67.   Terminal Secretary Pat Csokasy prepared the invoices and signed the 16 separate invoices that were part of the April 2011 Invoices under the statement "I CERTIFY THAT THE INVOICE IS TRUE & JUST AND THAT PAYMENT HAS NOT BEEN RECEIVED."   See, Exhibit F.

68.   These April 2011 Invoices were calculated based upon a daily storage rate (weight multiplied by rate multiplied by 30 days) for each claim, not a monthly rate (weight multiplying by rate).

13

69.  For example, the first invoice (ED-208-11 for $677.25) calculated the emergency storage claim for personal effects (referencing 2011 Contract Line Item 0004AE) as $672.67, based upon 45.76 (4,576 CWT divided by 100) multiplied by $0.49 (contract storage rate) multiplied by 30 days for April, 2011. See, Exhibit F, page 2.

70.  Using the above example, if instead the monthly rate had been applied to this first invoice (ED-208-11 for $677.25), the emergency storage claim for personal effects (for 2011 Contract Line Item 0004AE) should have been calculated as $24.42 (not $672.67), based upon 45.76 (4,576 CWT divided by 100) multiplied by $0.49 (contract storage rate), a difference of $648.25 based upon the monthly rate. See, Exhibit F, page 2.

71.  For other April 2011 examples, the remaining invoices calculated the emergency storage claim for personal effects (also referencing 2011 Contract Line Item 0004AE), based on weight multiplied by $0.49 (contract storage rate) multiplied by 30 days for April, 2011. See, Exhibit F, pages 3-17.

72.  The other Terminal invoices submitted under the 2011 Contract also multiplied the contract storage rate by 30, for the number of days in each billing month, for claims under Line Items 0001AE, 0002AH, 0003AH and 0004AE.

14

73. Based upon the monthly storage rates stated in the 2011 Contract, Terminal should have billed approximately $58,000 for storage under the invoices submitted under the 2011 Contract from April 1, 2011, to March 31, 2012.

74. Based upon the monthly storage rates stated in the 2011 Contract, Terminal should have billed a total of approximately $66,000 for storage under the 2011 Contract from April 1, 2011, through the residual period ending December 31, 2012.

**MURRAY'S 2012 CONTRACT**

75. Based upon continued problems with substantial cost overruns under the 2011 Contract with Terminal, Government officials resolicited bids for moving and storage services before the 2011 Contract ended on March 31, 2012.

76. Murray and Defendant Cauley submitted a solicitation for the 2012 contract on or about March 16, 2012. See, Exhibit G (pages omitted from original submitted).

77. On information and belief, Defendants Murray and Cauley represented that Murray had experience as a moving and storage business and was related to Terminal.

78. Murray was awarded the 2012 Contract as the lowest bidder.

79. Terminal did not submit a bid on the 2012 moving and storage work at issue.

80. Defendant Cauley managed both Murray and Terminal in 2012.

15

81. Defendant Cauley signed the Murray 2012 Contract Solicitations on or about March 16, 2012, and again on March 29, 2012. See, Email and 2012 Contract Solicitation attached hereto as Exhibit H.

82. On or about March 29, 2012, the Navy awarded Murray Contract No. M67001-12-D-0003 (hereinafter "2012 Contract") to Murray for a total contract amount of $73,330, for a period of twelve months, April 1, 2012 to March 31, 2013, with multiple one year options. See, Exhibit I.

83. Defendant Cauley signed the 2012 Contract. See, Exhibit J.

84. The 2012 Contract expressly incorporated the Federal Acquisition Regulations ("FAR") and Defense Federal Acquisition Regulations ("DFAR") requirements. See Exhibit I at page 3, paragraph B.3 and page 133, paragraph F.2.

85. The 2012 Contract stated a monthly storage rate for contract and payment purposes, with an exception for a prorated monthly rate (monthly rate divided by 30, and multiplied by number of days of storage) for items in storage for less than 30 days. See, Exhibit I at 9, 23, 125.

86. The 2012 Contract stated (Item No 0001AE) "SCHEDULE I: ROUTINE-EMERGENCY DEPLOYMENT FFP Monthly Storage Rate for

16

Personal Effects (See Specifications, Paragraph C5.7) ….."  See, Exhibit I at page 9.

87.  The 2012 Contract also stated (Item No 0001AE) "UNIT PRICE" as "$0.90" per "UNIT Hundred Pounds (CWT)" with an "ESTIMATED QUANTITY" of 6,000 for total storage amount of $5,400.  See, Exhibit I at page 9.

88.  The 2012 Contract further stated (Item No 0001AE) "Items in storage for less than 30 days will be billed as such: (MONTHLY STORAGE RATE / 30 x WEIGHT AMOUNT x NO. OF STORAGE DAYS)."  See, Exhibit I at page 9.

89.  The 2012 Contract further stated (Item No 0001AE) "For example, IF the unit price for storage is $1.000 and the 100 CWT was stored from 21 January – 31 January, the billing for that particular stored item will be $1.00 / 30 x 100 CWT x 11 days (item was stored for 11 Days in January).  By dividing the rate by 30, we will receive the daily rate for the portion of the month the items were stored." See, Exhibit I at page 9.

90.  The 2012 Contract stated (Item No 0002AH) "SCHEDULE II: ROUTINE-EMERGENCY DEPLOYMENT   FFP   Monthly Storage Rate for Household Goods (See Specifications, Paragraph C5.7)…."  See, Exhibit I at page 23.

91.  The 2012 Contract stated (Item No 0002AH) "UNIT PRICE" as "$0.90" per "UNIT Hundred Pounds (CWT)" with an "ESTIMATED QUANTITY" of 800 for total storage amount of $720. See, Exhibit I at page 23.

92.  The 2012 Contract further stated (Item No 0002AH) "Items in storage for less than 30 days will be billed as such: (MONTHLY STORAGE RATE / 30 x WEIGHT AMOUNT x NO. OF STORAGE DAYS).  For example, IF the unit price for storage is $1.000 and the 100 CWT was stored from 21 January – 31 January, the billing for that particular stored item will be $1.00 / 30 x 100 CWT x 11 days (item was stored for 11 Days in January).  By dividing the rate by 30, we will receive the daily rate for the portion of the month the items were stored." See, Exhibit I at page 23.

93.  The 2012 Contract also stated at C5.7 under "Section C – Descriptions and Specifications", for "(SUBCLIN 0001AE, 0002AH) Storage Rate for Personal Effects / Household Goods" that "***NOTE***:  Items in storage for less than 30 days will be billed as such: (MONTHLY STORAGE RATE / 30 x WEIGHT AMOUNT x NO. OF STORAGE DAYS).  For example, IF the unit price for storage is $1.000 and the 100 CWT was stored from 21 January – 31 January, the billing for that particular stored item will be $1.00 / 30 x 100 CWT x 11 days (item was stored for 11 Days in January).  By dividing the rate by 30, we will receive the daily rate for the portion of the month the items were stored." See, Exhibit I at page 125.

18

94. Stated simply, the Murray 2012 Contract provided for payment calculation based on the stated monthly storage rate multiplied by number of months and multiplied by weight, with an exception for storage of less than 30 days whereby the monthly storage rate is divided by 30 days in the month and multiplied by number of storage days.

95. In calculating the amounts for invoices and claims for storage billed under Contract Line Item Numbers 0001AE and 0002AH, Murray did not divide by 30 days (before multiplying by days of storage during month) to obtain the daily rate for less than 30 days of storage as provided in the 2012 Contract.

96. Murray billed and was paid $331,824 for invoices submitted for the services performed under the 2012 Contract during the period from April 1, 2012, to March 31, 2013.

97. Murray submitted 922 invoices under the 2012 Contract.

98. The Murray invoices submitted under the 2012 Contract calculated payment at a daily rate of $0.90 per day.

99. Murray systematically submitted invoices for storage calculated at a $0.90 daily rate under the 2012 Contract.

100. For invoice examples, Murray submitted Emergency Deployment Invoices for April, 2012, ("April 2012 Invoices") in the amount of $4,210.52. See, April 2012 Invoices attached hereto as Exhibit K.

101. The April 2012 Invoices were submitted by Murray with a certification that the invoices were correct. See, Exhibit K.

102. Murray manager Dwayne Cauley caused the April 2012 Invoices to be submitted. See, Exhibit K.

103. Dwayne Cauley signed the summary cover page for the April 2012 Invoices under the statement "I CERTIFY THESE INVOICES TO BE CORRECT AND JUST AND THAT PAYMENT HAS NO[T] BEEN RECEIVED." See, Exhibit K.

104. Terminal Secretary Pat Csokasy prepared the invoices and signed the 17 separate invoices that were part of the April 2012 Invoices under the statement "I CERTIFY THAT THE INVOICE IS TRUE & JUST AND THAT PAYMENT HAS NOT BEEN RECEIVED." Exhibit K.

105. These April 2012 Invoices were calculated based upon a daily storage rate (weight multiplied by rate multiplied by days stored) for each claim, not a monthly rate (weight multiplied by rate multiplied by days stored, divided by days in month).

106. For example, the first invoice (D-37-12 for $1,331.20) calculated the emergency storage claim (for 2012 Contract Line Item 0002AH) as $691.20 based upon 64 (6,400 CWT divided by 100) multiplied by $0.90 (contract storage rate) multiplied by 12 days in April, 2012. See, Exhibit K, page 2.

107. Using the above example, if instead the monthly rate had been applied to this first invoice (D-37-12 for $691.20), the

20

emergency storage claim (for 2012 Contract Line Item 0002AH) should have been calculated as $23.04 (not $691.20), based upon 64 (6,400 CWT divided by 100) multiplied by $0.90 (contract storage rate) multiplied by 12 days and divided by 30 days in month, a difference of $668.16 based upon the monthly rate. See, Exhibit K, page 2.

108. For another example, the fifth invoice (D-41-12 for $1,218.36) calculated the routine emergency storage claim (for 2012 Contract Line Item 0001AE) as $617.76 based upon 85.80 (8,580 CWT divided by 100) multiplied by $0.90 (contract storage rate) multiplied by 8 days in April, 2012. See, Exhibit K, page 6.

109. Using the above example, if instead the monthly rate had been applied to this fifth invoice (D-41-12 for $1,218.36), the emergency storage claim (for 2012 Contract Line Item 0001AE) should have been calculated as $20.59 (not $617.76), based upon 85.80 (8,580 CWT divided by 100) multiplied by $0.90 (contract storage rate) multiplied by 8 days and divided by 30 days in the month, a difference of $597.17 based upon the monthly rate. See, Exhibit K, page 6.

110. For other April 2012 examples, the remaining invoices calculated the storage claim (also referencing 2012 Contract Line Items 0002AH or 0001AE), based on weight multiplied by contract storage rate multiplied by days of storage, without dividing by 30 days in the month.  See, Exhibit K.

21

111. The other Murray invoices submitted under the 2012 Contract failed to divide the monthly storage rate by 30, the average number of days in the month, for claims under Contract Line Items 0001AE and 0002AH.

112. Based on monthly storage rate stated in the 2012 Contract, Murray should have billed approximately $33,000 for storage under the invoices submitted under the 2012 Contract.

113. Based on the substantial overpayments under both the 2011 Contract (Terminal) and 2012 Contract (Murray), the Navy audited the invoices submitted and payments made under these contracts.

114. A substantial amount of the overpayments under the 2011 Contract and 2012 Contract are based upon submitting invoices using a false and improper storage rate calculation.

115. On information and belief, Terminal and Murray systematically submitted invoices based upon false daily rate calculations, rather than monthly rate calculations.

116. On information and belief, Terminal and Murray also systematically overstated the weights of personal effects and household goods stored.

117. On information and belief, Terminal and Murray submitted invoices that were outside the time period and requirements of their respective contracts.

118. Defendants Murray, Terminal and Cauley did not apply the monthly storage rate calculation formula set forth in the 2011 Contract and 2012 Contract, but instead misapplied a daily storage rate calculation that systematically overbilled storage claims under the contracts.

119. Defendants Murray, Terminal and Cauley caused the submission of invoices that were false.

120. Defendants Murray, Terminal and Cauley knew that the 2011 Contract specified that the unit storage rates were calculated as monthly rates.

121. Defendants Murray, Terminal and Cauley knew that the 2012 Contract specified that the unit storage rates were calculated as monthly rates.

122. Defendants Terminal and Cauley submitted, or caused the submission of, numerous false invoices under the 2011 Contract.

123. The Defendants Terminal and Cauley submitted, or caused the submission of, numerous false claims under the 2011 Contract.

124. Defendants Murray and Cauley submitted, or caused the submission of, numerous false invoices under the 2012 Contract.

125. The Defendants Murray and Cauley submitted, or caused the submission of, numerous false claims under the 2012 Contract.

23

126. The Defendants Terminal, Murray and Cauley presented or caused to be presented false records and false statements in support of the false claims that were material to payment.

127. If the United States had known that the claims and invoices by Defendants were made based upon false records, false statements, and a fraudulent scheme, then the payments on the claims at issue would not have been issued from federal funds.

128. The Navy paid Terminal and Murray based upon false records, false statements, and fraudulent schemes by Defendants.

129. Defendants Terminal, Murray and Cauley knowingly submitted and caused the submission of claims that were false.

130. Defendants Terminal, Murray and Cauley knowingly submitted and caused the submission of false records and false statements in support of these claims.

131. Defendants Terminal, Murray and Cauley had actual knowledge, deliberately ignored, or recklessly disregarded the fact that the claims and invoices submitted were false or fraudulent and did not represent accurate information.

132. Employees of Defendants Terminal and Murray had actual knowledge, deliberately ignored, or recklessly disregarded the fact that the claims and invoices submitted were false or fraudulent and did not represent accurate information.

133. Defendants were unjustly enriched by these false claims,

24

in that they received monies to which they were not entitled, and also received payments under mistake of fact.

## FIRST CAUSE OF ACTION

### False Claims Act: Submission of False Claims

134. The United States realleges and incorporates by reference the above paragraphs as if set forth fully herein.

135. By virtue of the acts described above, Defendants Terminal, Murray and Cauley presented or caused to be presented to the United States false or fraudulent claims for payment in violation of the False Claims Act, as amended, 31 U.S.C. § 3729 (a)(1)(A), with actual knowldege, deliberate ignorance or reckless disregard; in that the Defendants systematically made false claims under the 2011 Contract and 2012 Contract as described above.

136. By reason of the foregoing, the United States suffered actual damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### False Claims Act: False Statements to Get a Claim Paid

137. The United States realleges and incorporates by reference the above paragraphs as if set forth fully herein.

138. By virtue of the acts described above, Defendants Terminal, Murray and Cauley knowingly made or used, or caused to be made or used, a false record or statement material to a false or fraudulent claim payment in violation of the False Claims Act, as

25

amended, 31 U.S.C. § 3729(a)(1)(B), with actual knowldege, deliberate ignorance or reckless disregard; in that the invoices, claims, records and statements did not justify payment under the 2011 Contract and 2012 Contract as described above.

139. By reason of the foregoing, the United States suffered actual damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**

**False Claims Act: Conspiracy to Get a False Claim Paid**

140.   The United States realleges and incorporates by reference the above paragraphs as if set forth fully herein.

141.   By virtue of the acts described above, Defendants Terminal, Murray and Causey knowingly conspired to present a false claim or made or used, or caused to be made or used, a false record or statement material to payment of a false or fraudulent claim in violation of the False Claims Act, as amended, 31 U.S.C. § 3729(a)(1)(C)); in that the claims, invoices, records and statements that Defendants submitted did not justify payment as described above.

142. By reason of the foregoing, the United States suffered actual damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**Payment under Mistake of Fact/ Restitution**

143.   The United States realleges and incorporates by reference the above allegation as if set forth fully herein.

26

144. This is a Claim against the Defendants Terminal and Murray for payment under mistake of fact.

145. The above described false claims and false statements which Defendants submitted or caused to be submitted constituted misrepresentations of material fact in that they misrepresented compliance with the contracts and the claims, invoices, records and statements did not justify payment as described above.

146. Acting on the accuracy and truthfulness of the information contained in the claims submitted, the United States paid certain sums of money to which Defendants Terminal and Murray were not entitled, and Defendants Terminal and Murray are thus liable to account for and pay such amounts, which are to be determined at trial, to the United States.

**FIFTH CAUSE OF ACTION**

**Unjust Enrichment/Restitution**

147. The United States realleges and incorporates by reference the above allegation as if set forth fully herein.

148. This is a claim for recovery of monies by which Defendants Terminal and Murray have been unjustly enriched.

149. By virtue of the false claims and false statements described above, Defendants Terminal and Murray wrongfully obtained funds to which they were not entitled.

150. By directly or indirectly obtaining funds to which they

was not entitled, Defendants Terminal and Murray were unjustly enriched at the expense of the United States, and are liable to account and pay such amounts, or the proceeds therefrom, which are to be determined at trial, to the United States.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of the United States and against Defendants as follows:

1. For violations of the False Claims Act, treble damages, plus the costs of investigation and prosecution, and civil penalties for each false Claim as allowed by law against Defendants Terminal, Murray and Cauley;

2. For an amount equal to the money mistakenly paid by the United States to Defendants Terminal and Murray, plus interest;

3. For the costs of this action, plus interest, and investigative costs as provided by law; and

4. Any other relief deemed just by the Court.

Respectfully submitted, this the 29th day of March, 2016.

JOHN STUART BRUCE
Acting United States Attorney


BY:      /s/ NEAL I. FOWLER
         NEAL I. FOWLER
Attorney for Plaintiff
Assistant United States Attorney
Civil Division
310 New Bern Avenue
Suite 800, Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 856-4049
Facsimile: (919) 856-4821
E-mail: neal.fowler@usdoj.gov
NC Bar #27371